A. Blaine Finley
**CUNEO, GILBERT & LADUCA, LLP**
4725 Wisconsin Ave., NW
Suite 200
Washington, D.C. 20016
Telephone: (202) 789-3960

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILKERSON FARMS ET, LLC, on behalf of itself and all others similarly situated, | |
| *Plaintiff*, | |
| v. | |
| CONTINENTAL AKTIENGESELLSCHAFT; CONTINENTAL TIRE THE AMERICAS, LLC; COMPAGNIE GÉNÉRALE DES ÉTABLISSEMENTS; MICHELIN NORTH AMERICA, INC.; NOKIAN TYRES PLC; NOKIAN TYRES INC; NOKIAN TYRES U.S. OPERATIONS LLC; THE GOODYEAR TIRE & RUBBER COMPANY; PIRELLI & C. S.P.A.; PIRELLI TIRE LLC; BRIDGESTONE CORPORATION; BRIDGESTONE AMERICAS, INC.; AND DOES 1-100, | **CLASS ACTION COMPLAINT** **DEMAND FOR JURY TRIAL** |
| *Defendants*. | |

Plaintiff Wilkerson Farms ET, LLC ("Plaintiff") brings this action on behalf of itself and on behalf of the Class defined herein against Defendants for overcharges on new replacement tires for cars, vans, trucks, and buses purchased other than directly from Defendants Continental Aktiengesellschaft; Continental Tire the Americas, LLC; Compagnie Générale Des Établissements; Michelin North America, Inc.; Nokian Tyres Plc; Nokian Tyres Inc; Nokian Tyres U.S. Operations LLC; The Goodyear Tire & Rubber Company; Pirelli & C. S.P.A.; Pirelli Tire LLC; Bridgestone Corporation; Bridgestone Americas, Inc. (collectively, "Defendants") based upon personal knowledge, where applicable, information and belief, and the investigation of counsel.

## I.    NATURE OF THE ACTION

1.    On January 30, the European Commission said in a press statement[1] that it is carrying out inspections at the premises of various tire manufacturing companies in Member States related to suspected anticompetitive practices.

2.    The European Commission stated that it suspects "price coordination took place amongst the inspected companies," constituting a secret cartel to fix the prices of "new replacement t[i]res for passenger cars, vans, trucks and buses."[2]

3.    Tire firms Michelin, Bridgestone Corp, Continental AG, Goodyear Tire & Rubber Co., Pirelli & C.SpA, and Nokian Renkaat Oyj confirmed that they were hit by the European Commission's antitrust raids.[3]

4.    The European Commission Antitrust Division is running its investigation in partnership with its counterparts from the relevant national competition authorities of the Member

---

[1] https://ec.europa.eu/commission/presscorner/detail/en/ip_24_561
[2] *Id.*
[3] https://www.bloomberg.com/news/articles/2024-01-30/tire-firms-raided-by-eu-watchdogs-over-suspected-cartel

States where the inspections were carried out, which would include France, Belgium, Germany, Italy, and Finland.

5.    The tire industry involves many billions of dollars of commerce. The global automotive tires market was valued at $262 billion in 2023 and is expected to increase to $280 billion in 2024.[4] In the first six months of 2023, Michelin reported $15.1 billion in sales.[5] Bridgestone Corporation reported $14.1 billion.[6] Continental AG reported $9.2 billion. Goodyear reported $9.8 billion.[7] Pirelli reported $3.7 billion.[8] Nokian Renkaat Oyj reported $567.8 million.[9]

6.    Michelin, Bridgestone, Continental AG, and Goodyear are the world's largest suppliers of tires. They are the giants of the tire industry and compete in all related sectors. Using 2021 numbers with the automotive tire market valued at $180 billion[10], the approximated global market shares for the tires market based on annual company tire sales are: Michelin (France): 14.6%; Bridgestone (Japan): 13.6%; Continental AG (Germany): 7.2%; Goodyear (United States): 8.2%. Their collective market share of the tires market is almost 50%. Including Pirelli and Nokian Renkaat Oyj, their collective market share should be about 50%.[11]

---

[4] https://www.smithers.com/resources/2020/may/smithers-forecasts-the-global-tire-market-to-reach
[5] https://www.michelin.com/en/finance/results-and-presentations/results-and-sales/#:~:text=Michelin%E2%80%99s%20guidance%20for%202023%20is%20confirmed%20for%20segment,%E2%82%AC2.3%20billion%20%28vs.%20more%20than%20%E2%82%AC2.0%20billion%20previously%29.
[6] https://www.bridgestone.com/ir/library/result/pdf/e_r5_4_2_results.pdf
[7] https://corporate.goodyear.com/content/dam/goodyear-corp/documents/events-presentations/qtr2_2023_goodyear_investor_letter.pdf ; https://corporate.goodyear.com/content/dam/goodyear-corp/documents/events-presentations/qtr1_2023_goodyear_investor_letter.pdf
[8] https://corp-assets.pirelli.com/corporate/8092_Relazione_finanziaria_semestrale_al_30.06.2023_ENG_FINAL.pdf
[9] https://nokiantyres.studio.crasman.fi/pub/web/attachments/interim_reports/Nokian Tyres Q2 2023 release EN_2107.pdf
[10] https://www.globenewswire.com/en/news-release/2022/09/21/2520442/0/en/Automotive-Tire-Market-Size-is-projected-to-reach-USD-180-Billion-by-2030-growing-at-a-CAGR-of-4-3-Straits-Research.html#:~:text=The%20global%20automotive%20tire%20market%20size%20was%20worth,4.3%25%20during%20the%20forecast%20period%20%282022%20%E2%80%93%202030%29.
[11] Tire market estimates reflect sell-in (sales of manufacturers to dealers and vehicle manufacturers) data published by local tiremaker associations, plus Michelin's estimates of sales by tire manufacturers that do not belong to any association. These estimates are based primarily on import-export statistics and are expressed in the number of tires sold.

7.      Plaintiff and the members of the putative Class are commercial end-users of new replacement tires for cars, vans, trucks, and buses ("Tires") purchased from Defendants for commercial use.

## II.     JURISDICTION AND VENUE

8.      Plaintiff brings this action under Section 16 of the Clayton Act (15 U.S.C. § 26) to secure injunctive relief against defendants for violating Section 1 of the Sherman Act (15 U.S.C. § 1). Plaintiff also brings these state law class claims on behalf of all the classes to recover actual and/or compensatory damages, double and treble damages as permitted, pre- and post-judgment interest, costs, and attorneys' fees for the injury caused by defendants' conduct in increasing the price of Tires. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1337, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26. This Court also has jurisdiction under 28 U.S.C. § 1332(d) as there are members of each Class who are citizens of a different State than Defendants.

10.      Venue is proper in this District pursuant to Sections 4, 12, and 16 of the Clayton Act, 15 U.S.C. § 15(a), and 28 U.S.C. § 1391(b), (c), and (d). One or more Defendants resided, transacted business, were found, had agents in, or engaged in substantial activity in this District, and a substantial portion of the affected interstate trade and commerce described in this Complaint was carried out in this District.

11.      This Court also has personal jurisdiction over each Defendant because, inter alia, each Defendant: (a) transacted business throughout the United States, including in this District; (b) manufactured, sold, shipped, and/or delivered substantial quantities of Tires throughout the United

States, including in this District; (c) had substantial contacts with the United States, including in

this District; and/or (d) engaged in an antitrust conspiracy that was directed at and had a direct,

foreseeable, and intended effect of causing injury to the business or property of persons residing

in, located in, or doing business throughout the United States, including in this District.

12.    The activities of Defendants, as described herein, were within the flow of, were

intended to, and did have direct, substantial, and reasonably foreseeable effects on, the foreign

and interstate commerce of the United States.

### III.    PARTIES

#### A.    Plaintiff

13.    **Plaintiff Wilkerson Farms ET, LLC** is located at 20912 Beaumont Ave, Linden,

Iowa 50146. Plaintiff purchased one or more tires other than directly from Defendants during the class

period for their own commercial use, and plaintiff suffered antitrust injury as a result of the violations

alleged in this complaint.

#### B.    Defendants

14.    **Defendant Continental Aktiengesellschaft ("Continental),"** is a German

company with its headquarters at Vahrenwalder Strasse 9, 30165 Hannover, Germany. Continental

AG has four group sectors: Automotive, Tires, ContiTech, and Contract Manufacturing.[12] The

Tires group has five business areas: (i) Original Equipment, (ii) Replacement APAC, (iii)

Replacement EMEA, (iv) Replacement the Americas, and (iv) Specialty Tires.[13]

---

[12] Continental 2022 Annual Report, pg. 26
https://cdn.continental.com/fileadmin/imported/sites/corporate/_international/english/hubpage
s/30_20investors/30_20reports/annual_20reports/downloads/continental_annual_report_2022.pd
f?_gl=1*9f4olq*_ga*MTcxMDgzNzQ4Ni4xNzA2NjMyMDgz*_ga_CXY4Q1X5YZ*MTcwNjc
xNTA5MS4zLjEuMTcwNjcxNTI1NS4wLjAuM
[13] *Id.*

15.     In its 2022 Annual Report, Continental reported that its "Tires group sector achieved a particularly positive result, even surpassing expectations with an adjusted EBIT margin of 13.1 percent."[14] In 2022, Continental AG reported sales of €14 billion globally for its tire group. Continental AG's tire group boasts 56,987 employees worldwide.[15]

16.     In the Tires group sector, sales to dealers and end users represent the largest share of the tire-replacement business.[16] For the Tires group sector, economies of scale are important drivers of profitability. For that reason, "manufacturing takes place at major locations in the dominant automotive markets, namely Europe, the U.S., and China.[17]

17.     **Defendant Continental Tire the Americas, LLC ("Continental U.S.")** is a limited liability company incorporated under the laws of Ohio, with its principal place of business at 1830 MacMillian Park Drive, Fort Mill, SC 29707. Continental U.S. "manufactures and distributes a complete premium line of passenger, light truck and commercial tires for original equipment and replacement markets."[18] Continental US sells its tires through "independent tire dealers, car dealers, and mass retail companies across North America."[19] Continental U.S. has manufacturing facilities in Barnseville, Georgia (Tire Cord [textile]), Mt. Vernon, Illinois (Passenger/light truck/Commercial truck tires), Sumter, South Carolina (passenger/light truck tires), and Jackson, Missouri (commercial truck tires).[20]

18.     Continental U.S.'s headquarters in Fort Mill, SC is the "operational hub for business in the region and oversees all tire product lines including passenger, light truck,

---

[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] https://www.ustires.org/continental-tire-americas-llc
[19] *Id.*
[20] *Id.*

commercial, two wheel and specialty tires."[21] The facility has 500+ employees and includes teams for engineering & technology, Sales & marketing, and "central functions."[22]

19.    Continental U.S.'s Sumter Plant is "a tire manufacturing facility [that] produces high-quality, premium lines of passenger and light truck tires for original equipment and replacement markets."[23] It has a "State of the Art manufacturing facility with a growing team of more than 1200 employees."[24]

20.    **Defendant Compagnie Generale des Establissements Michelin SCA ("Michelin")** is organized under the laws of France with its principal place of business at 23 place des Carmes-Déchaux, 63000 Clermont-Ferrand, France. CGEM is the Michelin Group's parent company, which directly or indirectly owns all of its subsidiaries.[25] CGEM's two main subsidiaries are Manufacture Française des Pneumatiques Michelin ("MFPM"), a wholly-owned subsidiary that coordinates all of the Group's manufacturing, sales and research operations in France and Compagnie Financière Michelin ("CFM"), a wholly-owned subsidiary that owns most of the Group's manufacturing, sales and research companies outside of France and coordinates their operations.[26]

21.    **Defendant Michelin North America, Inc.** is a corporation organized under the laws of the State of New York with its principal place of business at One Parkway South, Greenville, SC 29615-5022. Michelin designs, manufactures, and sells tires for every type of vehicle, including airplanes, automobiles, bicycles, earthmovers, farm equipment, heavy-duty trucks, and motorcycles.[27] Michelin is one of the leading manufacturers of tires in the United

---

[21] https://www.continental.com/en-us/career/our-locations/fort-mill/
[22] https://www.continental.com/en-us/career/our-locations/fort-mill/
[23] https://www.continental.com/en-us/career/our-locations/sumter/
[24] *Id.*
[25] Michelin 2022 Universal Registration Document, at pg. 403.
[26] *Id.*
[27] https://www.ustires.org/michelin-north-america-inc

States. In 2022, Michelin had €10.92 billion in sales, 80% of which were generated in the United States. Michelin employs 23,000 people across 34 plants in the United States and Canada.[28] Michelin has manufacturing facilities in, inter alia, Alabama (light trucks and passenger tires), Indiana (car tires), Oklahoma (passenger tires), and South Carolina (passenger tires and truck and bus tires).

22.    **Defendant Nokian Tyres** plc is organized under the laws of Finland with its principal place of business at Pirkkalaistie 7, P.O. Box 20, 37101 Nokia, Finland. Nokian Tyres plc is the parent company of the Nokian Tyres Group, which includes subsidiaries worldwide. Nokian Tyres plc develops and manufactures tires for cars, trucks, and heavy machinery. In 2019, the company's net sales were $1.8 billion, and it employed some 4,700 people.

23.    **Defendant Nokian Tyres Inc.** is a corporation organized under the laws of the State of Delaware. It is a fully owned subsidiary of Nokian Tyres U.S. Holdings Inc., and an indirect subsidiary of Nokian Tyres plc. In December of 2018, Nokia Tyres announced its new headquarters located at 501 Union Street in Nashville, Tennessee, which would house Nokia Tyres' Vice President along with members of the company's sales, customer service, IT, logistics, finance, and marketing teams.[29] In 2017, Nokian Tyres announced it had opened a $360 million manufacturing facility located at 520 Nokian Tyres Dr., Dayton, TN., 37321.[30] The manufacturing facility produces car and light truck all season tires and all-weather tires for consumers in the United States and Canada.

---

[28] Michelin 2022 Universal Registration Document, at pg. 14
[29] https://www.nokiantyres.com/company/news-article/nokian-tyres-appoints-mr-mark-earl-to- lead-the-americas-business-area-as-of-may-1-2018/; https://www.nokiantires.com/company/news-article/nokian-tyres-thriving-in-new-nashville- headquarters/
[30] https://journalrecord.com/2019/10/nokian-tyres-opens-360m-tire-factory-in-tennessee/

24.     **Defendant Nokian Tyres U.S. Operations LLC** is a limited liability company organized under the laws of the State of Tennessee. It is a fully owned subsidiary of Nokian Tyres U.S. Holdings Inc., and an indirect subsidiary of Nokian Tyres plc.

25.     **Defendant The Goodyear Tire & Rubber Company** is a corporation organized under the laws of the State of Ohio with its principal place of business at 200 Innovation Way Akron, Ohio 44316-0001. Goodyear is one of the world's leading tire companies, with one of the most recognizable brand names. It develops, manufactures, markets and distributes tires for most applications and manufactures and markets rubber-related chemicals for various uses.[31] Through its worldwide network of aligned dealers and wholesale distributors and its own retail outlets and commercial truck centers, Goodyear offers its products for sale to consumer and commercial customers, along with repair and other services.[32] Goodyear manufactures its products in 57 facilities in 23 countries and has operations in most regions of the world.[33] Goodyear manufactures and sells under the Goodyear, Cooper, Dunlop, Kelly, Debica, Sava, Fulda, Mastercraft and Roadmaster brands.[34] Approximately 86% of Goodyear's sales in 2022, 85% in 2021 and 84% in 2020 were for tire units.[35] The principal channel for the sale of Goodyear and Cooper brand tires in Americas is a large network of independent dealers. Goodyear, Cooper, Dunlop, Kelly and Mastercraft brand tires are also sold to numerous national and regional retailers, in Goodyear Company-owned stores in the United States, and through the wholesale channel, including through

---

[31] Goodyear 10K 2022, pg. 2. https://corporate.goodyear.com/content/dam/goodyear-corp/documents/annualreports/2022%20Annual%20Report.pdf
[32] *Id.*
[33] Goodyear 10K 2022, pg. 2. https://corporate.goodyear.com/content/dam/goodyear-corp/documents/annualreports/2022%20Annual%20Report.pdf
[34] https://goodyear.gcs-web.com/static-files/7ebb1867-1e25-49d8-98a1-b60e30bb1296
[35] *Id.*

TireHub, LLC, Goodyear's national wholesale tire distributor in the United States, and a network of aligned U.S. regional wholesale tire distributors.[36]

26.    **Defendant Pirelli & C. S.p.**A is organized under the laws of Italy with its principal place of business at Via Bicocca degli Arcimboldi, 3, 20126 Milano MI, Italy. Pirelli designs, manufactures, and distributes tires for cars, motorcycles, and bicycles. Pirelli focuses its business on the high end, premium product segment where it is a world leader. Pirelli has a commercial presence in over 160 countries and 19 manufacturing sites in 12 countries.[37]

27.    **Defendant Pirelli Tire LLC** is a foreign limited liability company organized under the laws of Delaware with its principal place of business located at 100 Pirelli Drive Rome, GA 30161. Pirelli Tire LLC includes the Modular Integrated Robotized System (MIRS) facility and research and development center at its Rome, Georgia headquarters, a state-of-the-art manufacturing plant in Silao, Mexico, sales and marketing offices in New York City, Los Angeles, Detroit, Montreal and Atlanta, and a prestige flagship store in Los Angeles.[38] The company manufactures, distributes, and markets original equipment and replacement tires for export and domestic car/motorcycle applications.

28.    **Defendant Bridgestone Corporation** is organized under the laws of Japan with its principal place of business at 1-1, Kyobashi 3-chome, Chuo-ku, Tokyo 104-8340. Bridgestone Corporation is the parent corporation of the Bridgestone Group (the "Group"), which refers to all Group companies, including Bridgestone Americas ("BSAM"), Bridgestone China, Asia Pacific ("BSCAP"), Bridgestone Europe, Russia, Middle East, India, and Africa ("BSEMIA"), and

---

[36] Goodyear 2023 10K, pg. 3. https://goodyear.gcs-web.com/static-files/7ebb1867-1e25-49d8- 98a1-b60e30bb1296
[37] https://www.ustires.org/pirelli-tire-llc
[38] https://www.ustires.org/pirelli-tire-llc

Bridgestone Japan ("BSJP").[39] Bridgestone Corporation is the world's largest tire and rubber company.[40]

29.    **Defendant Bridgestone Americas, Inc. ("BSAM")** is incorporated under the laws of Nevada with its principal place of business at 200 4th Ave, Suite 100, Nashville, Tennessee, 37201-2256. BSAM and its subsidiaries develop, manufacture, and market a wide range of Bridgestone, Firestone, and associate brand tires to address the needs of a broad range of customers, including consumers, automotive and commercial vehicle original equipment manufacturers, and those in the agricultural, forestry and mining industries.[41] BSAM has U.S. manufacturing facilities in Arkansas, Georgia, Iowa, Illinois, North Carolina, Ohio, South Carolina, Tennessee, and Texas.[42]

30.    **DOE Defendants 1-100** are other individuals or entities who engaged in or abetted the unlawful conduct by Defendants set forth in this Complaint. Plaintiff may amend this Complaint to allege the names of additional Defendants as they are discovered.

## IV.    FACTUAL ALLEGATIONS

### A.    Competition Authorities in Europe Are Investigating Price Fixing in the New Replacement Tires Market

31.    On January 30, 2024, the EC announced it had conducted raids at the premises of several suppliers in the new replacement tires market:

> The European Commission is carrying out unannounced inspections at the premises of companies active in the tyres industry in several Member States.
>
> The Commission has concerns that the inspected companies may have violated EU antitrust rules that prohibit cartels and restrictive business practices (Article 101 of the Treaty on the Functioning of the European Union).

---

[39] 32Bridgestone 3.0 Journey, 2023 Integrated Report at pg. 3.
https://www.bridgestone.com/ir/library/integrated_report/pdf/2023/ir2023_single.pdf
[40] https://www.ustires.org/bridgestone-americas-inc
[41] https://www.ustires.org/bridgestone-americas-inc
[42] *Id.*

The products concerned by the inspections are new replacement tyres for passenger cars, vans, trucks and busses sold in the European Economic Area. The Commission is concerned that price coordination took place amongst the inspected companies, including via public communications.

The Commission officials were accompanied by their counterparts from the relevant national competition authorities of the Member States where the inspections were carried out.

Unannounced inspections are a preliminary investigatory step into suspected anticompetitive practices. The fact that the Commission carries out such inspections does not mean that the companies are guilty of anti-competitive behaviour, nor does it prejudge the outcome of the investigation itself.

32.     Michelin, Bridgestone Corp, Continental AG, and Goodyear Tire & Rubber Co. all confirmed they were hit by European Union antitrust raids. Pirelli & C. SpA and Nokian Renkaat Oyj also said they were targeted.[43]

33.     These multinational investigations follow several years in which the Defendants have generally increased their profits while also imposing price increases that are not adequately explained by other competitive factors.

34.     Tire prices, specifically in the United States, increased dramatically after a long period of relatively stable pricing.

35.     For most of the 2010s, the price level of Tires was stable, changing only by small amounts slowly. Over the last four years, however, the prices of Tires have seen dramatic increases, driven by lock-step prices increases from the major U.S. Tire manufacturers.[44]

---

[43] https://www.bloomberg.com/news/articles/2024-01-30/tire-firms-raided-by-eu-watchdogs-over-suspected-cartel
[44] https://www.ustires.org/2023-tire-shipment-outlook



Source: U.S. Bureau of Labor Statistics                    fred.stlouisfed.org

36.     For example, in 2021, the extreme parallel prices increase began between Defendants. Effective February 1, 2021, Michelin increased prices on select Michelin and BFGoodrich brand passenger and light truck tires, as well as on select commercial truck tires, up to 5% "due to changing business dynamics of the U.S. market."[45]

37.     Effective March 1, 2021, Continental increased prices on select passenger and light truck tires in the U.S. within the Continental and General brands by an undisclosed amount.[46]

38.     Effective April 1, 2021, Michelin and Goodyear both increased prices on tires. Michelin increased prices on select Michelin, BFGoodrich and Uniroyal passenger and light truck

---

[45] https://www.moderntiredealer.com/topic-category/topics/article/11475158/michelin-will-raiseconsumer-commercial-prices-on-feb-1-2020-12-19
[46] https://www.moderntiredealer.com/topics/industry-news/article/11474953/continental-plansprice-hike-on-plt-tires-2021-01-06

tires up to 8%, citing "changing business dynamics and rising costs of raw materials."[47] Goodyear raised prices of its Goodyear, Dunlop, and Kelly-brand consumer tires by up to 8%.[48]

39.    Effective April 15, 2021, Pirelli increased prices on passenger and light truck tires in the United States up to 7%, citing "higher price of raw materials and changing market conditions."[49]

40.    Effective May 1, 2021, Bridgestone increased prices on select Bridgestone and Firestone brand passenger and light truck tires up to 8% in the United States and Canada due to "increased business costs and other market dynamics."[50]

41.    In February 2021, Michelin announced price increases up to 12% on passenger and light truck replacement tires in the United States and Canada.[51]

42.    Just a few months later in June 2021, Bridgestone announced it will increase prices up to 8% for passenger and light truck tires sold in the U.S and Canada. In addition, Bridgestone said it will increase prices on certain Bridgestone commercial truck tires.[52]

43.    In August 2021, Continental announced prices increases for passenger and light truck tires in the U.S. market.[53]

---

[47] https://www.moderntiredealer.com/topic-category/topics/article/11473824/michelin-will-raiseconsumer-tire-prices-on-april-1-2021-03-01
[48] https://www.moderntiredealer.com/topics/industry-news/article/11473768/goodyear-toincrease-consumer-tire-prices-2021-03-03
[49] https://www.moderntiredealer.com/topic-category/topics/article/11473594/pirelli-will-raiseprices-in-us-on-april-15-2021-03-09
[50] https://www.moderntiredealer.com/site-placement/featuredstories/article/11473222/bridgestone-to-raise-consumer-tire-prices-on-may-1-2021-03-24
[51] https://michelinmedia.com/pages/blog/detail/article/c/a1139/
[52] https://www.tirereview.com/bridgestone-price-increase/#:~:text=Bridgestone%20today%20announced%20it%20will%20increase%20prices%20up,truck%20tires%20and%20Bandag%20retreads%20in%20select%20channels.
[53] https://www.tirereview.com/continental-tire-announces-price-increase/

44.    In 2021, Goodyear raised its prices three times over. CEO Richard Kramer announced on Bloomberg TV that "we have increased prices. There's a number of announced price increases that we've put into the market already."[54]

45.    In May 2021, Pirelli announced it would increase prices by up to 6% for its tires, varying by line and tire size.[55]

46.    Effective June 1, 2021, Goodyear increased prices on Goodyear, Dunlop, and Kelly consumer tires by up to 8%. Goodyear blamed the increase on "changing market dynamics in the industry and [a] reflect[ion of] the strong value of the Goodyear brands"—using identical wording from its April 1, 2021 price increase.[56]

47.    Effective July 1, 2021, Michelin, Continental, and Pirelli implemented price increases on tires. Michelin increased prices on certain aftermarket Michelin, BFGoodrich, and Uniroyal passenger and light truck tires by up to 6%. Continental increased prices on select Continental and General brand passenger and light truck tires by an undisclosed amount.[57] Pirelli increased prices of passenger and light truck tires by up to 6%, citing higher price of raw materials and changing market conditions.[58]

48.    Effective September 1, 2021, Michelin and Goodyear implemented price increases on consumer tires. Michelin increased prices on certain aftermarket Michelin, BFGoodrich, and

---

[54] https://www.bloomberg.com/news/videos/2021-06-21/goodyear-raising-prices-as-demand-outpaces-supply-video
[55] https://www.tirereview.com/pirelli-us-price-increases-tires/
[56] https://www.moderntiredealer.com/topics/industry-news/article/11472039/goodyear-plans- another-consumer-tire-price-hike
[57] https://www.moderntiredealer.com/topic-category/topics/article/11471940/continental-will- raise-consumer-tire-prices-in-july-1-2021-05-05
[58] https://www.moderntiredealer.com/topics/industry-news/article/11471596/pirelli-plans- another-price-hike

Uniroyal passenger and light truck tires by up to 14%.[59] Goodyear increased prices on passenger and light truck tires by up to 8%.[60]

49.    Effective October 1, 2021, Continental and Pirelli increased prices on tires. Continental increased prices on some Continental and General passenger and light truck tires by an undisclosed amount.[61] Pirelli increased prices on car and light truck tires by up to 8%, citing higher prices of raw materials and changing market conditions.[62]

50.    Effective January 1, 2022, Defendant Michelin implemented price increases up to 12% on select Michelin, BFGoodrich, and Uniroyal passenger and light truck replacement tires.[63] Similarly, Goodyear raised its prices on consumer tires by up to 12%.[64]

51.    Effective January 3, 2023, Continental increased prices on select Continental and General passenger and light truck tires by an undisclosed amount.[65]

52.    Effective January 17, 2022, Pirelli increased its prices for car and light truck tires by up to 10%.[66]

53.    Effective April 1, 2022, Defendant Continental, Michelin, and Bridgestone increased tire prices. Continental increased its price on select Continental and General passenger and light trucks by an amount that varied across specific products by brand.[67] Michelin increased prices by 5% on the majority of select passenger and light truck replacement tires.[68] Bridgestone

---

[59] https://www.tyrepress.com/2021/08/michelin-announces-north-america-price-increases/
[60] https://www.ratchetandwrench.com/topics/news/article/11463860/goodyear-and-cooper- consumer-tire-prices-are-going-up-modern-tire-dealer
[61] https://www.tirereview.com/continental-tire-announces-price-increase/
[62] https://www.rubbernews.com/tire/pirelli-raising-us-tire-prices-oct-1
[63] https://www.prnewswire.com/news-releases/michelin-implements-price-increase-across- passenger-brands-and-commercial-offers-in-north-american-market-301435108.html
[64] https://www.tirebusiness.com/news/goodyear-raise-north-america-tire-prices-july-1
[65] https://www.tirereview.com/continental-tire-announces-price-increase-2/
[66] https://www.tirereview.com/pirelli-price-increases/
[67] https://www.tirereview.com/continental-tire-announces-price-increase-3/
[68] https://michelinmedia.com/pages/blog/detail/article/c/a1155/#:~:text=Tread%20rubber %20and%20associated%20supplies,2%2C%202022.

increased prices by up to 10% on non-winter Bridgestone, Firestone, and Fuzion passenger and light truck replacement tires.[69]

54.    Effective April 11, 2022, Pirelli increased its prices by up to 10%.[70]

55.    Effective June 1, 2022, Defendants Continental and Michelin each increased prices on tires. Continental increased its prices on Continental- and General-branded passenger and light truck tires by an undisclosed amount.[71] Michelin increased prices on the majority of its passenger and light truck replacement tires ranging from 5-12%.[72]

56.    Effective June 15, 2022, Pirelli increased its prices for car and light truck tires by up to 10%.[73]

57.    Effective July 1, 2022, Goodyear and Bridgestone each increased prices by up to 10% on consumer tires.[74]

58.    Effective October 1, 2022, Bridgestone again increased its prices on Bridgestone, Firestone, and Fuzion passenger and light truck tires by up to 9%.[75]

59.    Effective January 1, 2023, Michelin and Bridgestone each increased their tire prices. Michelin increased prices on select passenger and light trucks tires by up to 9%.[76] Bridgestone increased its prices on passenger and light truck replacement tires by an undisclosed amount.[77]

---

[69] https://www.tirereview.com/bridgestone-price-increase-2/
[70] https://www.tirereview.com/pirelli-increases-price-for-tires/
[71] https://www.tirebusiness.com/news/conti-raise-us-tire-prices-june-1
[72] https://www.tirereview.com/michelin-price-increase/
[73] https://www.tirereview.com/pirelli-increase-prices-plt-tires/
[74] https://www.tirereview.com/bridgestone-increase-prices/; https://www.tirebusiness.com/news/goodyear-raise-north-america-tire-prices-july-1.
[75] https://www.tirereview.com/bridgestone-price-increase-3/
[76] https://www.tirereview.com/michelin-price-increases/
[77] https://www.tirereview.com/bridgestone-americas-increased-prices/

60.    Effective January 15, 2023, Pirelli increased its prices for car and light truck tires by up to 10%.[78]

61.    The following table summarizes Defendants' price increases on passenger and light truck replacement tires between 2021 and 2023:

| Defendant | Effective Date | Price Increase |
|---|---|---|
| Michelin | February 1, 2021 | Up to 5% |
| Continental | March 1, 2021 | Undisclosed |
| Michelin | April 1, 2021 | Up to 8% |
| Goodyear | April 1, 2021 | Up to 8% |
| Pirelli | April 15, 2021 | Up to 7% |
| Bridgestone | May 1, 2021 | Up to 8% |
| Goodyear | June 1, 2021 | Up to 8% |
| Michelin | July 1, 2021 | Up to 6% |
| Continental | July 1, 2021 | Undisclosed |
| Pirelli | July 1, 2021 | Up to 6% |
| Goodyear | September 1, 2021 | Up to 8% |
| Michelin | September 1, 2021 | Up to 14% |
| Continental | October 1, 2021 | Undisclosed |
| Pirelli | October 1, 2021 | Up to 8% |
| Michelin | January 1, 2022 | Up to 12% |
| Goodyear | January 1, 2022 | Up to 12% |
| Continental | January 3, 2022 | Undisclosed |
| Pirelli | January 17, 2022 | Up to 10% |
| Continental | April 1, 2022 | Undisclosed |
| Michelin | April 1, 2022 | Up to 5% |
| Bridgestone | April 1, 2022 | Up to 10% |
| Pirelli | April 11, 2022 | Up to 10% |
| Continental | June 1, 2022 | Undisclosed |
| Michelin | June 1, 2022 | 5-12% |
| Pirelli | June 15, 2022 | Up to 10% |
| Goodyear | July 1, 2022 | Up to 10% |
| Bridgestone | July 1, 2022 | Up to 10% |
| Bridgestone | October 1, 2022 | Up to 9% |
| Michelin | January 1, 2023 | Up to 9% |
| Bridgestone | January 1, 2023 | Undisclosed |
| Pirelli | January 15, 2023 | Up 10% |

---

[78] https://www.tirereview.com/pirelli-increase-prices-tires/

62.    Despite unprecedented world events affecting their raw material sources and supply chains like the COVID-19 pandemic and the war in Ukraine, the Defendants largely experienced an increase in revenue in 2022, which correspond with their increased prices for replacement tires.

a.    In 2022, Michelin reported $30.7 billion in revenue, up about 7% from 2021.[79]

b.    In 2022, Bridgestone reported $27.7 billion in revenue, a year-on-year increase of 27%.[80]

c.    In 2022, Continental reported $42.3 billion in revenue, up 16.7% from 2021.[81]

d.    In 2022, Goodyear reported $20.8 billion in revenue, up 19% from 2021.[82]

e.    In 2022, Pirelli reported $7.1 billion in revenue, a growth of 24.1% compared to 2021.[83]

f.    In 2022, Nokian reported $1.9 billion in revenue, up 3.6% from 2021.[84]

63.    Between 2021 and 2023, the average price of tires rose 21.4%, a rate of increase more than 70% higher than core inflation.[85]

64.    And Defendants' price increases are disproportionate to their increased costs during the pandemic. For example, in its Q1 2022 earnings call on May 6, 2022, Goodyear's Chief

---

[79] https://www.michelin.com/en/finance/key-figures-and-indicators/financial-key-figures/
[80] https://www.bridgestone.com/ir/financialdata/results/
[81]
https://cdn.continental.com/fileadmin/__imported/sites/corporate/_international/english/hubpages/30_20investors/40_20events/presentations/2023_presentations/2023-03-08_fy_2022_results_presentation.pdf
[82] https://corporate.goodyear.com/content/dam/goodyear-corp/documents/annualreports/2022 Annual Report.pdf
[83] https://corp-assets.pirelli.com/corporate/Cs_Pirelli_2022_preliminari_ENG_22_febbraio_2023_ENG_Cda.pdf
[84] https://www.nokiantyres.com/company/news-article/nokian-tyres-plc-financial-statement-release-2022-resilient-performance-in-an-unprecedented-business-environment/
[85] 68 https://www.propublica.org/article/inflation-tires-rubber-imports-high-prices

Financial Officer told investors "[Goodyear's] increase in the replacement tire prices more than offset [its] costs."[86]

65.     Sales volume also did not suffer due to price increases, which would normally be seen in a price-competitive market. For example, Continental's sales volume rose by 19.3% in 2022. Their annual report from that year indicates "agreements reached with customers on price adjustments and to offset inflation-related effects had a positive impact on the sales performance of the Automotive group sector."[87]

### B.    The New Tire Replacement Industry

66.     The "Tires" market, or the new tire replacement industry for cars, vans, trucks and buses, consists of tires that Plaintiff and Class Members have purchased to replace worn or defective tires on their vehicles.

67.     For at least as long as the Class Period, the tires industry has been characterized by numerous factors that facilitated Defendants' conspiracy. The industry has exhibited (1) market concentration amongst a limited number of participants; (2) high barriers to entry; (3) inelasticity of demand; (4) ease of information sharing among Defendants, and (5) and unconcentrated buy-side.

68.     ***Market Concentration.*** The tires industry is a highly concentrated market where a small number of firms have operated and dominated the industry for a great number of years. The more highly concentrated a market is, the less competitive it can tend to become. When more than two companies, but still a small number, compete in, dominate, and control a given market sector that all are influential players in the market, the market can be described as an oligopoly.

---

[86] https://news.alphastreet.com/the-goodyear-tire-rubber-company-gt-q1-2022-earnings-call- transcript/
[87] https://annualreport.continental.com/2022/en/service/docs/annual-report-2022-data.pdf (See page 73)

69.     This market structure can give Defendants influence over price and other aspects of the market in the presence of collusive activity. Major barriers to competition include exclusive access to resources or patented processes, patents, actions of businesses in the oligopoly or government limits.

70.     Michelin, Bridgestone, Continental, and Goodyear have dominated the market for over 25 years.

71.     Defendant Michelin was founded in 1888 in the French city of Clermont-Ferrand as a tire manufacturer for bicycles and horse-drawn carriages before introducing automobile tires in the 1890s.[88] Michelin introduced many tire innovations that characterize tires universally sold today; for example, in 1948 Michelin was the first company to introduce steel-belted radial tires. Michelin and Bridgestone are neck-in-neck for being the largest tire manufacturers in the world. In 2022, Michelin sales were valued at $30.7 billion, of which $26.3 billion were dedicated to tire sales.[89] $11.7 billion, or about 38%, of Michelin sales were in North America. In 2021, the industry website Tire Business reported that Michelin occupied 14.6% of the global tire market.[90]

72.     Defendant Bridgestone was founded in 1931 in the Japanese city of Kurume, Fukuoa as a tire manufacturer using Japanese technology. In 1965, Bridgestone opened its first overseas plant in Singapore and began its rapid global expansion.[91] In 1981 it merged with the Ohio-based Firestone Tire & Rubber Company, giving it access to North American production sites and markets.[92] Bridgestone competes with Michelin as the largest tire manufacturer in the world. In 2022, Bridgestone sales were valued at $27.7 billion, a majority of which were dedicated

---

[88] https://www.michelin.com/en/michelin-group/about-us/michelin-heritage/
[89] https://www.tirebusiness.com/news/data-shapes-annual-global-tire-report
[90] https://www.michelin.com/en/finance/regulated-information/annual-report/
[91] https://www.bridgestone.com/corporate/history/story/1961-1970.html
[92] https://www.bridgestone.com/corporate/history/story/1981-1990.html

to automotive and road-related products. $13.4 billion, or about 48%, of Bridgestone sales were in the Americas.[93] In 2021, Bridgestone occupied 13.6% of the global tire market.[94]

73.    Defendant Continental was founded in 1871 in the German city of Hanover and became the first German company to manufacture pneumatic tires for bicycles.[95] Today, Continental is one of the largest tire manufacturers in the world, although it has a diverse range of automotive product segments. In 2022, Continental sales were valued at $42.3 billion, of which about $15 billion were dedicated to tires. $11.4 billion, or 27%, of sales were in North America.[96] In 2021, Continental occupied approximately 7% of the global tire market.[97]

74.    Defendant Goodyear was founded in 1898 in Akron, Ohio, and made it first sale of rubber tubes the same year. Goodyear because the industry leader in the manufacture and sales of carriage tires in 1905 and grew to dominate the American automobile tire market soon afterwards. Goodyear expanded internationally in 1910 and has been a global leader in tire production ever since. In 2022, Goodyear's sales were valued at $20.8 billion, of which $17.9 billion were due to tire sales. $12.76 billion, or about 61%, of sales were in the Americas.[98] In 2021, Goodyear occupied approximately 8.6% of the global tire market.[99]

75.    Not surprisingly given the age of the main players in the industry, the tire industry is a mature one dominated by established corporations, each having multinational operations, global market reach, diverse product portfolios, and easy access to resources and capital.

76.    Defendants have focused on mergers, acquisitions, and partnerships to consolidate the market, leading the industry to be dominated by just a few companies.

---

[93] https://www.bridgestone.com/ir/library/integrated_report/pdf/2023/ir2023_spread.pdf
[94] https://www.michelin.com/en/finance/regulated-information/annual-report/
[95] https://www.continental.com/en/company/history/milestones/
[96] https://annualreport.continental.com/2022/en/service/docs/annual-report-2022-data.pdf
[97] https://www.michelin.com/en/finance/regulated-information/annual-report/
[98] https://corporate.goodyear.com/content/dam/goodyear-corp/documents/annualreports/2022 Annual Report.pdf
[99] https://www.michelin.com/en/finance/regulated-information/annual-report/

77.     Notable examples of tire manufacturing industry consolidation include:

a.     In 1987, Continental acquired General Tire, an American tire manufacturer.

b.     In 1988, Bridgestone acquired Firestone Tire and Rubber Company, the original equipment supplier of Ford automobiles.

c.     In 2004, Continental AG purchased Phoenix AG, a rubber product production company.

d.     In 2006, Bridgestone acquired Bandag, Inc., a tire production company.

e.     In 2018, Goodyear formed TireHub with Bridgestone for wholesale distribution in the United States.

f.     In 2018, Michelin acquired Camso, a leading Canadian tire manufacturer.

g.     In 2018, Michelin acquired Fenner PLC, the global leader in reinforced polymer-based products to expand Michelin's offer of tires.

h.     In 2021, Goodyear acquired Cooper Tire & Rubber Co., the fifth-largest North American tire maker.

78.     ***High Barriers to Entry.*** Companies seeking to enter the tire manufacturing industry confront various significant barriers to entry, including high labor intensity, complex production process and high degree of equipment specialization. Further, Defendants are to a large extent vertically integrated. New entrants to the industry are unable to rival Defendants' ability to control multiple stages of tire production. Given these barriers, new entrants are unlikely to be able to compete away supra-competitive cartel pricing.

79.     The larger four defendants are all vertically integrated in the global tire production and retail process. Bridgestone has fourteen raw material plants for rubber production in tires

spread across the world.[100]  Goodyear chemical manufacturing facilities involved in the tire production process.[101] Continental invests 7-8% of its annual sales in research and development for tire manufacturing per year.[102] Michelin owns a tire recycling plant in Chile that produces materials it uses for new tire production.[103]

80.    In 2017, PW Consulting produced a report about opportunities and challenges in the tire industry stating that "The tire industry is obviously labor-intensive and capital-intensive, and the barriers to entry are high."[104]

81.    ***Inelasticity of Demand.*** Demand is inelastic for most tire industry products. When there are few or no substitutes for a product, purchasers have little choice but to pay higher prices in order to purchase these products. Tires are a fundamental and necessary component to motor vehicle function. Anyone with a car, van, truck, or bus also needs tires. Tires perform a particular function that cannot be replicated by substitute products.

82.    ***Ease of Information Sharing Among Defendants.*** Because of their common membership in trade associations and interrelated business relationships between certain executives, officers, and employees of the Defendants, there were many opportunities both before and during the Class Period for Defendants to collude by discussing competitive information. These trade associations and other business relationships make a market more susceptible to collusive behavior because they can provide a pretense under which conspirators can exchange sensitive company information such as pricing and market allocation.

---

[100] https://www.bridgestone.com/corporate/locations/raw_materials/americas.html
[101] https://corporate.goodyear.com/content/dam/goodyear-corp/documents/responsibility/esg-reports/GD_CRR_2021_Full Data Table %2B Progress Toward Goals.pdf
[102] https://annualreport.continental.com/2022/en/report/corporate-profile/structure.php
[103] https://www.michelin.com/en/press-releases/michelin-launches-construction-on-its-first-tire-recycling-plant-in-the-world/
[104] https://pmarketresearch.com/analysis-of-opportunities-and-challenges-in-chinas-tire-industry/

83.    For example, all Defendants are six of the twelve members of the U.S. Tire Manufacturer's Association (USTMA), the national trade association for tire manufacturers that produce tires in the United States.[105]

84.    The USTMA lobbies on behalf of the tire manufacturing industry's interests before federal and state policymakers. It also develops and offers several industry publications, including tire care and service manuals, bulletins, and wall charts that help educate tire and automotive service professionals.

85.    The Tire Industry Association (TIA) is an international non-profit association representing all segments of the tire industry, including companies that manufacture, repair, recycle, sell, service or use new or retreaded tires, and also those suppliers or individuals who furnish equipment, material or services to the industry. The official membership list of the TIA is not public, but all six Defendants have been affiliated with the TIA.

86.    ***The Buy-Side of the Market Is Unconcentrated.*** The unconcentrated nature of the buy-side of the replacement tires market is consistent with collusion. With a large number of buyers, each of whom forms a small share of the total marketplace, there is less incentive for cartel members to cheat on collusive pricing arrangements, since each potential sale is small while the risk of disrupting the collusive pricing agreement carries large penalties.

**C.    Defendants' Conspiracy**

87.    On January 30, 2024, the European Commission said in a press statement that is carrying out inspections at the premises of various tire manufacturing companies in Member States related to suspected anticompetitive practices.

---

[105] https://www.ustires.org/about-us

88.    The European Commission stated that it suspects "price coordination took place amongst the inspected companies," constituting a secret cartel to fix the prices of "new replacement t[i]res for passenger cars, vans, trucks and buses."

89.    The European Commission Antitrust Division is running its investigation in partnership with its counterparts from the relevant national competition authorities of the Member States where the inspections were carried out, which would include France, Belgium, Germany, Italy, and Finland.

90.    The six industry giants confirmed that they were under investigation and were cooperating with the various competition authorities.

**D.    Price Increases**

91.    In furtherance of their conspiracy, Bridgestone, Continental, Goodyear, Michelin, Pirelli, and Nokian have each implemented significant price increases during the Class Period.

92.    Defendants' representatives publicly acknowledged the success of these price increases. For example, in its Q1 2022 earnings call on May 6, 2022, Goodyear's Chief Financial Officer told investors "[Goodyear's] increase in the replacement tire prices more than offset [its] costs."[106]

## V.    CLASS ACTION ALLEGATIONS

93.    Plaintiff brings this action on behalf of itself and as a class action under the provisions of Rules 23(a) and (b) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on behalf of members of the following class (the "Nationwide Class"):

> All persons or entities in the United States that purchased Tires other than directly from Defendants for their own commercial use from February 1, 2021, and continuing through the present (the "Class Period"). The United States includes all fifty states, its territories, and the District of Columbia.

---

[106] https://news.alphastreet.com/the-goodyear-tire-rubber-company-gt-q1-2022-earnings-call- transcript/

94.    Plaintiff also brings this action on behalf of itself and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to the common law of unjust enrichment and the state antitrust, unfair competition, and consumer protection laws of the states and territories listed below (the "Indirect Purchaser States")[107] on behalf of the following class (the "Damages Class"):

> All persons or entities in the Indirect Purchaser States that purchased Tires other than directly from the Defendants for their own commercial use from February 1, 2021, and continuing through the present (the "Class Period").

95.    Excluded from the Class are Defendants; their officers, directors, management, employees, parents, subsidiaries, affiliates, and coconspirators. Also excluded are any federal, state, or local governmental entities and their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions, any judicial officers presiding over this action and their spouses as well as their law clerks and their spouses.

96.    Members of the Class are so numerous and geographically dispersed that joinder is impracticable. Further, members of the Class are readily identifiable from information and records in Defendants' possession.

97.    Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and members of the Class were damaged by the same wrongful conduct of Defendants.

98.    Plaintiff will fairly and adequately protect and represent the interests of members of the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of members of the Class.

---

[107] The Indirect Purchaser States include the following states (and territory): Alaska, Arkansas, Arizona, California, Colorado, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Washington, West Virginia, and Wisconsin.

99.     Plaintiff is represented by counsel with experience in the prosecution and leadership of class action antitrust and other complex litigation.

100.    Questions of law and fact common to the members of the Class predominate over questions that may affect only individual Class members, thereby making damages with respect to members of the Class as a whole appropriate. Questions of law and fact common to members of the Class include, but are not limited to:

a.      Whether Defendants combined and/or conspired to fix, raise, maintain, or stabilize prices of Tires to purchasers in the United States at any time during the Class Period;

b.      Whether Defendants concertedly fixed, raised, maintained or stabilized prices of Tires sold to purchasers in the United States at any time during the Class Period, or committed other conduct in furtherance of the conspiracy alleged herein;

c.      Whether the actions of Defendants in so conspiring violated Section 1 of the Sherman Act;

d.      Whether Defendants fraudulently concealed their conspiracy from purchasers in the United States;

e.      The scope and duration of the alleged conspiracy;

f.      Injury suffered by Plaintiff and members of the Class;

g.      Damages suffered by Plaintiff and members of the Class; and

h.      Whether Defendants have acted or refused to act on grounds generally applicable to members of the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to members of the Class as a whole.

101.    Class action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would require.

102.    The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweigh potential difficulties in management of this class action.

103.    Plaintiff knows of no special difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

104.    Plaintiff has defined members of the Class based on currently available information and hereby reserves the right to amend the definition of members of the Class, including, without limitation, the Class Period.

## VI.    EQUITABLE TOLLING AND FRAUDULENT CONCEALMENT

105.    Any applicable statute of limitations for Plaintiff and the Class has been tolled with respect to any claims and rights of action that Plaintiff and the Class have as a result of the unlawful combination and conspiracy alleged in this Complaint. Defendants are equitably estopped from asserting a statute of limitations defense by reason of Defendants' concealment of the conspiracy.

106.    Plaintiffs have had neither actual nor constructive knowledge of the pertinent facts constituting their claims for relief asserted herein, despite their diligence in trying to discover such facts. Plaintiffs and members of the Class could not have discovered through reasonable diligence the existence of the conspiracy alleged herein until in or about January 30, 2024, when European

Commission dawn raids in conjunction with competition authorities of various EU member states became public.

107.    Defendants engaged in a self-concealing conspiracy that did not give rise to facts that would put Plaintiffs or the Class on inquiry notice that there was a conspiracy among Defendants. Defendants also engaged in acts to conceal their conspiracy including secret communications and meetings.

108.    Defendants also gave pretextual justifications for the pricing changes and the reduction in output that occurred during the Class Period.

109.    Indeed, Defendants relied on a variety of market-based explanations for pricing changes and reductions in output in order to conceal the conspiracy.

## CAUSES OF ACTION

## COUNT I

## <u>Violation of Section 1 of the Sherman Act (15 U.S.C. §§ 1, 3)</u><br><u>(Conspiracy in Restraint of Trade)</u>

91.    Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

92.    At least as early as February 1, 2021, defendants entered into a continuing agreement in violation of the Sherman Act.

93.    Defendants' anticompetitive acts involved United States domestic commerce and other commerce, and had a direct, substantial, and foreseeable effect on interstate commerce by raising, fixing, and maintaining prices for Tires throughout the United States.

94.    As a direct and proximate result of defendants' anticompetitive conduct, plaintiff and members of the Nationwide Class have been injured in their business or property and will

29

continue to be injured in their business and property by paying more for Tires than they would have paid and will pay in the absence of the conspiracy.

95.    The alleged contract, combination, or conspiracy is a per se violation of the federal antitrust laws.

## COUNT II

### Violation of State Antitrust Statutes

96.    Plaintiff repeats the allegations set forth above as if fully set forth herein, and each of the state-specific causes of action described below incorporates the allegations as if fully set forth therein.

97.    During the Class Period, Defendants engaged in a continuing contract, combination, or conspiracy with respect to the sale of Tires in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

98.    The contract, combination, or conspiracy consisted of an agreement among Defendants to fix, raise, inflate, stabilize, and/or maintain at artificially supracompetitive prices for Tires, including in the United States and its territories.

99.    In formulating and effectuating this conspiracy, Defendants performed acts in furtherance of the combination and conspiracy, including agreeing to fix, increase, inflate, maintain, or stabilize effective prices of Tires purchased by Plaintiff and members of the Damages Class.

100.    Defendants engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, increase, maintain, or stabilize prices of Tires. As a direct and proximate result, Plaintiff and members of the Damages Class were deprived of free and open competition and paid more for Tires than they otherwise would have in the absence of Defendants'

unlawful conduct. This injury is of the type the antitrust laws of the states included herein were designed to prevent, and this injury flows from that which makes Defendants' conduct unlawful.

101.    Accordingly, Plaintiff and the members of the Damages Class in each of the following jurisdictions seek damages (including statutory damages where applicable), to be trebled or otherwise increased as permitted by a particular jurisdiction's antitrust law, and costs of suit, including reasonable attorneys' fees, to the extent permitted by the following state laws.

102.    Defendants' anticompetitive acts described above were knowing, willful and constitute violations of the following state antitrust statutes.

103.    **Arizona:** Defendants have entered into an unlawful agreement in restraint of trade in violation of Ariz. Rev. Stat. §44-1401, *et seq*. Defendants' conspiracies had the following effects: (1) price competition for Tires was restrained, suppressed, and eliminated throughout Arizona; (2) Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arizona. During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §44-1401, *et seq*.

104.    **California:** Defendants have entered into an unlawful agreement in restraint of trade in violation of Cal. Bus. & Prof. Code §16700, *et seq*. During the Class Period, Defendants entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Cal. Bus. & Prof. Code §16720. Each defendant has acted in violation of Cal. Bus. & Prof. Code §16720 to fix, raise, stabilize, and maintain prices of Tires at supracompetitive levels. The violations of Cal. Bus. & Prof. Code §16720 consisted, without limitation, of a continuing unlawful trust and concert of action among Defendants, the substantial terms of which were to fix, raise, maintain, and stabilize the prices of Tires. For the purpose of

forming and effectuating the unlawful trust, Defendants have done those things which they combined and conspired to do, including, but not limited to, the acts, practices and course of conduct set forth above, and creating a price floor, fixing, raising, and stabilizing the price of Tires. The combination and conspiracy alleged herein has had, inter alia, the following effects: (1) price competition for Tires has been restrained, suppressed, and/or eliminated in the State of California; (2) prices for Tires provided by Defendants have been fixed, raised, stabilized, and pegged at artificially high, non-competitive levels in the State of California and throughout the United States; and (3) those who purchased Tires indirectly from Defendants have been deprived of the benefit of free and open competition. As a result of Defendants' violation of Cal. Bus. & Prof. Code §16720, Plaintiff and members of the Damages Class seek treble damages and their cost of suit, including a reasonable attorneys' fee, pursuant to Cal. Bus. & Prof. Code §16750(a).

105.    **District of Columbia:** Defendants have entered into an unlawful agreement in restraint of trade in violation of D.C. Code §28-4501, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) Tire price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiff and members of the Damages Class, including those who resided in the District of Columbia and purchased Tires in the District of Columbia, paid supracompetitive, artificially inflated prices for Tires, including in the District of Columbia. During the Class Period, Defendants' illegal conduct substantially affected commerce in the District of Columbia. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of D.C. Code §28-4501, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under D.C. Code §28-4501, *et seq*.

106.    **Illinois:** Defendants have entered into an unlawful agreement in restraint of trade in violation of the Illinois Antitrust Act, 740 Illinois Compiled Statutes 10/1, *et seq*. The Defendants' combinations or conspiracies had the following effects: (1) Tire price competition was restrained, suppressed, and eliminated throughout Illinois; (2) Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois. During the Class Period, Defendants' illegal conduct substantially affected Illinois commerce. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of 740 Illinois Compiled Statutes 10/1, *et seq*. Accordingly, Plaintiffs and members of the Class seek all forms of relief available under 740 Illinois Compiled Statutes 10/1, *et seq*.

107.    **Iowa:** Defendants have entered into an unlawful agreement in restraint of trade in violation of Iowa Code §553.1, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) Tire price competition was restrained, suppressed, and eliminated throughout Iowa; (2) Tire prices were raised, fixed, maintained and stabilized at artificially high levels throughout Iowa. During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce. By reason of the foregoing, Defendants have entered into agreements in restraint of trade in violation of Iowa Code §553.1, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Iowa Code §553.1, *et seq*.

108.    **Kansas**: Defendants have entered into an unlawful agreement in restraint of trade in violation of Kan. Stat. §50-101, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) Tire price competition was restrained, suppressed, and eliminated throughout Kansas; (2) Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Kansas. During the Class Period, Defendants' illegal conduct substantially affected

Kansas commerce. Accordingly, Plaintiff and members of the Damages Class seek all forms of relief available under Kan. Stat. §50-101, *et seq*.

109.    **Maine:** Defendants have entered into an unlawful agreement in restraint of trade in violation of Me. Rev. Stat. Ann. tit. 10, § 1101. Defendants' combinations or conspiracies had the following effects: (1) Tire price competition was restrained, suppressed, and eliminated throughout Maine; (2) Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Maine. During the Class Period, Defendants' illegal conduct substantially affected Maine commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Me. Rev. Stat. Ann. tit. 10, § 1104.

110.    **Michigan:** Defendants have entered into an unlawful agreement in restraint of trade in violation of Mich. Comp. Laws §445.771, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) Tire price competition was restrained, suppressed, and eliminated throughout Michigan; (2) Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Michigan. During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Mich. Comp. Laws §445.771, *et seq*.

111.    **Minnesota:** Defendants have entered into an unlawful agreement in restraint of trade in violation of Minn. Stat. §325D.49, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) Tire price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota. During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Minn. Stat. §325D.49, *et seq*.

112.    **Mississippi:** Defendants have entered into an unlawful agreement in restraint of trade in violation of Miss. Code §75-21-1, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) Tire price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Mississippi. During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Miss. Code §75-21-1, *et seq*.

113.    **Nebraska:** Defendants have entered into an unlawful agreement in restraint of trade in violation of Neb. Rev. Stat. §59-801, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) Tire price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska. During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Neb. Rev. Stat. §59-801, *et seq*.

114.    **Nevada:** Defendants have entered into an unlawful agreement in restraint of trade in violation of Nev. Rev. Stat. Ann. §598A.010, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) Tire price competition was restrained, suppressed, and eliminated throughout Nevada; (2) Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nevada. During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Nev. Rev. Stat. Ann. §598A.010, *et seq*.

115.    **New Hampshire**: Defendants have entered into an unlawful agreement in restraint of trade in violation of New Hampshire Revised Statutes Ann. §356:1. Defendants' combinations

or conspiracies had the following effects: (1) Tire price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire. During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §356:1, *et seq*.

116.    **New Mexico:** Defendants have entered into an unlawful agreement in restraint of trade in violation of New Mexico Statutes Annotated § 57-1-1, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) Tire price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico. During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under New Mexico Statutes Annotated § 57-1-1, *et seq*.

117.    **New York:** Defendants have entered into an unlawful agreement in restraint of trade in violation of New York General Business Laws § 340, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) Tire price competition was restrained, suppressed, and eliminated throughout New York; (2) Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York. During the Class Period, Defendants' illegal conduct substantially affected New York commerce. The conduct set forth above is a per se violation of the Donnelly Act, § 340, *et seq*. Accordingly, Plaintiff and members of the Damages Class seek all relief available under New York General Business Laws § 340, *et seq*.

118.    **North Carolina:** Defendants have entered into an unlawful agreement in restraint of trade in violation of North Carolina General Statutes § 75-1, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) Tire price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under North Carolina General Statutes § 75-16, *et seq*.

119.    **North Dakota**: Defendants have entered into an unlawful agreement in restraint of trade in violation of N.D. Cent. Code §51-08.1-01, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) Tire price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Dakota. During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under N.D. Cent. Code §51-08.1-01, *et seq*.

120.    **Oregon:** Defendants have entered into an unlawful agreement in restraint of trade in violation of Or. Rev. Stat. § 646.725, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) Tire price competition was restrained, suppressed and eliminated throughout Oregon; (2) Tire prices were raised, fixed, maintained and stabilized at artificially high levels throughout Oregon. During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Or. Rev. Stat. § 646.780, *et seq*.

121.    **Rhode Island:** Defendants have entered into an unlawful agreement in restraint of trade in violation of Rhode Island General Laws § 6-36-4, *et seq*. The Rhode Island statutes allow actions on behalf of indirect purchasers for conduct during the Class Period. Defendants' combinations or conspiracies had the following effects: (1) Tire price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island. During the Class Period, Defendants' illegal conduct had a substantial effect on Rhode Island commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Rhode Island General Laws § 6-36-11, *et seq*.

122.    **South Dakota:** Defendants have entered into an unlawful agreement in restraint of trade in violation of South Dakota Codified Laws § 37-1-3.1, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) Tire price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota. During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under South Dakota Codified Laws § 37-1-3.1, *et seq*.

123.    **Tennessee:** Defendants have entered into an unlawful agreement in restraint of trade in violation of Tenn. Code Ann. §47-25-101, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) Tire price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Tennessee. During the Class Period, Defendants' illegal conduct

had a substantial effect on Tennessee commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Tenn. Code Ann. §47-25-101, *et seq.*

124.    **Utah:** Defendants have entered into an unlawful agreement in restraint of trade in violation of Utah Code Annotated § 76-10-3101, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) Tire price competition was restrained, suppressed, and eliminated throughout Utah; (2) Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Utah. During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Utah Code Annotated § 76-10-3101, *et seq.*

125.    **Vermont:** Defendants have entered into an unlawful agreement in restraint of trade in violation of 9 Vermont Stat. Ann. § 2453, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) Tire price competition was restrained, suppressed, and eliminated throughout Vermont; (2) Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Vermont. During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under 9 V.S.A. § 2465, *et seq.*

126.    **West Virginia:** Defendants have entered into an unlawful agreement in restraint of trade in violation of West Virginia Code § 47-18-3, *et seq.* Defendants' combinations or conspiracies had the following effects: (1) Tire price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia. During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under West Virginia Code § 47-18-9, *et seq.*

127.    **Wisconsin:** Defendants have entered into an unlawful agreement in restraint of trade in violation of Wis. Stat. §133.01, *et seq*. Defendants' combinations or conspiracies had the following effects: (1) Tire price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Wisconsin. During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce. Accordingly, Plaintiff and members of the Damages Class seek all relief available under Wis. Stat. §133.01, *et seq*.

## COUNT III

### Violation of State Consumer Protection Statutes

128.    Plaintiff repeats the allegations set forth above as if fully set forth herein, and each of the state-specific causes of action described below incorporates the allegations as if fully set forth therein.

129.    Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

130.    **Alaska**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Alaska Statute § 45.50.471, *et seq*. Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which Tires at issue was sold, distributed, or obtained in Alaska and took efforts to conceal their agreements from Plaintiff and members of the Damages Class. The aforementioned conduct on the part of Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Alaska law. Defendants' unlawful conduct had the following effects: (1) Tire at Issue price

competition was restrained, suppressed, and eliminated throughout Alaska; (2) Tire at Issue prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Alaska. During the Class Period, Defendants' illegal conduct substantially affected Alaska commerce and Tire purchasers. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. § 45.50.471, *et seq*., and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

131.    **131. Arkansas**: Defendants have knowingly entered into an unlawful agreement in restraint of trade in violation of Ark. Code Ann. §4-88-101, *et seq*. Defendants knowingly agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at non-competitive and artificially inflated levels, the prices at which Tires were sold, distributed, or obtained in Arkansas and took efforts to conceal their agreements from Plaintiff and members of the Damages Class. The aforementioned conduct on the part of the Defendants constituted "unconscionable" and "deceptive" acts or practices in violation of Ark. Code Ann. §4-88-107(a)(10). Defendants' unlawful conduct had the following effects: (1) Tire price competition was restrained, suppressed, and eliminated throughout Arkansas; (2) Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Arkansas. During the Class Period, Defendants' illegal conduct substantially affected Arkansas commerce and consumers. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code Ann. §4-88-107(a)(10) and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

132.    **California:** Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of Cal. Bus. & Prof. Code §17200, *et seq*. During the Class Period, Defendants manufactured, marketed, sold, or distributed

Tires in California, and committed and continue to commit acts of unfair competition, as defined by Cal. Bus. & Prof. Code §17200, *et seq*., by engaging in the acts and practices specified above. This claim is instituted pursuant to Cal. Bus. & Prof. Code §§17203 and 17204, to obtain restitution from these Defendants for acts, as alleged herein, that violated Cal. Bus. & Prof. Code §17200, commonly known as the Unfair Competition Law. Defendants' conduct as alleged herein violated Cal. Bus. & Prof. Code §17200. The acts, omissions, misrepresentations, practices and nondisclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of Cal. Bus. & Prof. Code §17200, *et seq*., including, but not limited to, the following: (1) the violations of §1 of the Sherman Act, as set forth above; (2) the violations of Cal. Bus. & Prof. Code §16720, *et seq*., set forth above. Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Cal. Bus. & Prof. Code §16720, *et seq*., and whether or not concerted or independent acts, are otherwise unfair, unconscionable unlawful or fraudulent; (3) Defendants' acts or practices are unfair to purchasers of Tires in the State of California within the meaning of Cal. Bus. & Prof. Code §17200 et. seq.; and (4) Defendants' acts and practices are fraudulent or deceptive within the meaning of Cal. Bus. & Prof. Code §17200, *et seq*. Plaintiff and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits that may have been obtained by Defendants as a result of such business acts or practices. The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future. The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused, and continue to cause Plaintiff and the members of the Damages Class to pay supracompetitive and artificially inflated

prices for Tires. Plaintiff and the members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition. The conduct of Defendants as alleged in this Complaint violates Cal. Bus. & Prof. Code §17200, *et seq*. As alleged in this Complaint, Defendants have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiff and the members of the Damages Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to Cal. Bus. & Prof. Code §§17203 and 17204.

133.    **Colorado**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Colorado Consumer Protection Act, Colorado Rev. Stat. § 6-1-101, *et seq*. Defendants engaged in an unfair and deceptive trade practices during the course of their business dealings, which significantly impacted Plaintiff as actual or potential purchasers of the Defendants' goods and which caused Plaintiff to suffer injury. Defendants took efforts to conceal their agreements from Plaintiff. Defendants' unlawful conduct had the following effects: (1) Tires at Issue price competition was restrained, suppressed, and eliminated throughout Colorado; (2) Tires at Issue prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Colorado. During the Class Period, Defendants' illegal conduct substantially affected Colorado commerce and purchasers of Tires. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Colorado Rev. Stat. § 6- 1-101, *et seq*., and, accordingly, Plaintiff and members of the Class seek all relief available under that statute and as equity demands.

134.    **Florida:** Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act,

Fla. Stat. §501.201, *et seq*. Defendants' unlawful conduct had the following effects: (1) Tire price competition was restrained, suppressed, and eliminated throughout Florida; (2) Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida. During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers. Accordingly, plaintiff and members of the Damages Class seek all relief available under Fla. Stat. §501.201, *et seq*.

135.    **Minnesota**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq*. Defendants engaged in unfair and deceptive trade practices during the course of their business dealings, which significantly impacted Plaintiff as a purchaser of the Defendants' goods, and which caused Plaintiff to suffer injury. Defendants took efforts to conceal their agreements from Plaintiff and the members of the Damages Class. Defendants' unlawful conduct had the following effects: (1) Tire price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Minnesota. During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce and Tire purchasers. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Minn. Stat. § 325D.43, *et seq*., and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute and as equity demands.

136.    **Nebraska**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq*. Defendants' unlawful conduct had the following effects: (1) Tires at Issue price competition was restrained, suppressed, and eliminated throughout

Nebraska; (2) Tires at Issue prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Nebraska. During the Class Period, Defendants marketed, sold, or distributed Tires at Issue in Nebraska, and Defendants' illegal conduct substantially affected Nebraska commerce and Tire purchasers. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601, *et seq*., and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

137.    **New Hampshire**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq*. Defendants sold the Tires at Issue in New Hampshire and deceived Plaintiff and Class Members in New Hampshire into believing that the Tires at Issue were competitively priced. Defendants' unlawful conduct had the following effects: (1) Tires at Issue price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) Tires at Issue prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Hampshire; (3) Plaintiff and members of the Damages Class, who resided in New Hampshire and/or purchased the Tires at Issue in New Hampshire were deprived of free and open competition in New Hampshire; and (4) Plaintiff and members of the Damages Class, who resided in New Hampshire and/or purchased the Tires at Issue in New Hampshire paid supracompetitive, artificially inflated prices for the Tires at Issue, in New Hampshire. During the Class Period, Defendants marketed, sold, or distributed Tires at Issue in New Hampshire, and Defendants' illegal conduct substantially affected New Hampshire commerce and Tires purchasers. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev.

Stat. § 358- A:1, *et seq.,* and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

138.    **New Mexico:** Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq*. In New Mexico, price-fixing is actionable as an "unconscionable trade practice" under N.M. Stat. § 57-12-2(E) because it "takes advantage of the lack of knowledge … of a person to a grossly unfair degree" and also results in a "gross disparity between the value received by a person and the price paid." Defendants had the sole power to set that price, and Plaintiff and members of the Damages Class had no meaningful ability to negotiate a lower price from wholesalers. Moreover, Plaintiff and members of the Damages Class lacked any meaningful choice in purchasing Tires because they were unaware of the unlawful overcharge, and there was no alternative source of supply through which Plaintiff and members of the Damages Class could avoid the overcharges. Defendants' conduct with regard to sales of Tires, including their illegal conspiracy to secretly fix the price of Tires at supracompetitive levels and overcharge consumers, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiff and the public. Defendants took grossly unfair advantage of Plaintiff and members of the Damages Class. Defendants' unlawful conduct had the following effects: (1) Tire price competition was restrained, suppressed and eliminated throughout New Mexico; (2) Tires prices were raised, fixed, maintained and stabilized at artificially high levels throughout New Mexico; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for Tires. During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers. As a direct and proximate result of Defendants' unlawful conduct,

Plaintiff and members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq*., and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

139.    **New York**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq*. Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Tires were sold, distributed or obtained in New York and took efforts to conceal their agreements from plaintiff and members of the Damages Class. Defendants and their coconspirators made public statements about the prices of Tires that either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for Tires; and Defendants alone possessed material information that was relevant to consumers, but failed to provide the information. Because of Defendants' unlawful trade practices in the State of New York, New York class members who indirectly purchased Tires were misled to believe that they were paying a fair price for Tires or the price increases for Tires were for valid business reasons; and similarly situated consumers were affected by Defendants' conspiracy. Defendants knew that their unlawful trade practices with respect to pricing Tires would have an impact on New York consumers and not just Defendants' direct customers. Defendants knew that their unlawful trade practices with respect to pricing Tires would have a broad impact, causing business class members who indirectly purchased Tires to be injured by paying more for Tires than they would have paid in the absence of Defendants' unlawful trade acts and practices. The conduct of Defendants described herein constitutes consumer-oriented deceptive acts or

practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of customers business that purchase tires in New York State in an honest marketplace in which economic activity is conducted in a competitive manner. Defendants' unlawful conduct had the following effects: (1) Tires price competition was restrained, suppressed, and eliminated throughout New York; (2) Tires prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) plaintiff and members of the Damages Class were deprived of free and open competition; and (4) plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for Tires. During the Class Period, Defendants marketed, sold, or distributed Tires in New York, and Defendants' illegal conduct substantially affected New York commerce and consumers. During the Class Period, each of Defendants named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold and/or distributed Tires in New York. Plaintiff and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349(h).

140.    **North Carolina:** Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.C. Gen. Stat. §75-1.1, *et seq*. Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which Tires were sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from Plaintiff and members of the Damages Class. Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts. Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy. Defendants committed inherently deceptive and self-concealing actions, of which Plaintiff could

not possibly have been aware. Defendants publicly provided pretextual and false justifications regarding their price increases. The conduct of Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and injury to commercial and institutional indirect purchasers along with broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers and commercial and institutional indirect purchasers in an honest marketplace in which economic activity is conducted in a competitive manner. Defendants' unlawful conduct had the following effects: (1) Tire price competition was restrained, suppressed and eliminated throughout North Carolina; (2) Tire prices were raised, fixed, maintained and stabilized at artificially high levels throughout North Carolina; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for Tires. During the Class Period, Defendants marketed, sold, or distributed Tires in North Carolina, and Defendants' illegal conduct substantially affected North Carolina commerce and consumers. During the Class Period, each of the Defendants named herein, directly, or indirectly and through affiliates, dominated and controlled, manufactured, sold and/or distributed Tires in North Carolina. Plaintiff and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat. §75-1.1, *et seq*., and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

141.    **North Dakota**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the North Dakota Unlawful Sales or Advertising Practices Statute, N.D. Century Code § 51-15-01, *et seq*. Defendants agreed to, and

did in fact, act in restraint of trade or commerce in North Dakota, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Tire at issue was sold, distributed, or obtained in North Dakota. Defendants deliberately failed to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Tires at Issue. Defendants misrepresented to all purchasers during the Class Period that Defendants' Tires at Issue prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) price competition for the Tires at Issue was restrained, suppressed, and eliminated throughout North Dakota; (2) Tires at Issue prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Dakota. During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce and Tires purchasers. As a direct and proximate result of Defendants' violations of law, Plaintiff and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Tires at Issue, misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Tires at Issue at prices set by a free and fair market. Defendants' misleading conduct and unconscionable activities constitute violations of N.D. Century Code § 51-15-01, *et seq*., and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

142.    **Rhode Island**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act (R.I. Gen. Laws § 6-13.1-1, *et seq*.) Defendants agreed to,

and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Tires were sold, distributed, or obtained in Rhode Island. Defendants deliberately failed to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Tires. Defendants owed a duty to disclose such facts, and considering the relative lack of sophistication of the average, non-business purchaser, Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that Defendants' Tires prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) Tires price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) Tires prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiff and members of the Damages Class were deprived of free and open competition; and (4) Plaintiff and members of the Damages Class paid supracompetitive, artificially inflated prices for Tires. Defendants' illegal conduct substantially affected Rhode Island commerce and consumers, including businesses that purchase tires. As a direct and proximate result of Defendants' violations of law, Plaintiff and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Tires, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Tires at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiff and members of the Damages Class as they related to the cost

of Tires they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island Gen. Laws. § 6-13.1-1, *et seq*., and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

143.    **South Carolina:** Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §39-5-10 *et seq*. Defendants' combinations or conspiracies had the following effects: (1) Tire price competition was restrained, suppressed and eliminated throughout South Carolina; (2) Tire prices were raised, fixed, maintained and stabilized at artificially high levels throughout South Carolina. During the Class Period, Defendants' illegal conduct had a substantial effect on South Carolina commerce. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the Damages Class have been injured in their business and property and  are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code Ann. §39-5-10 *et seq*., and, accordingly, Plaintiff and the members of the Damages Class seek all relief available under that statute.

144.    **South Dakota**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the South Dakota Deceptive Trade Practices and Consumer Protection Statute, S.D. Codified Laws § 37-24-1, *et seq*. Defendants agreed to, and did in fact, act in restraint of trade or commerce in South Dakota, by affecting, fixing, controlling, and/or maintaining, at artificial and non- competitive levels, the prices at which Tires at issue was sold, distributed, or obtained in South Dakota. Defendants deliberately failed to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Tires at Issue. Defendants misrepresented to all purchasers during the Class Period that Defendants' Tires at Issue prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) price competition for the Tires

at Issue was restrained, suppressed, and eliminated throughout South Dakota; (2) Tires at Issue prices were raised, fixed, maintained, and stabilized at artificially high levels throughout South Dakota. Defendants' illegal conduct substantially affected South Dakota commerce and on those who purchased Tires in South Dakota. As a direct and proximate result of Defendants' violations of law, Plaintiff and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Tires at Issue, misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Tires at Issue at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiff and members of the Damages Class as they related to the cost of Tires at Issue they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Codified Laws § 37-24-1, *et seq.,* and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

145. **Vermont:** Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont Stat. Ann. § 2451, *et seq*. Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Vermont, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Tires were sold, distributed, or obtained in Vermont. Defendants deliberately failed to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Tires. Defendants

owed a duty to disclose such facts, and Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that Defendants' Tire prices were competitive and fair. During the Class Period, Defendants' illegal conduct had a substantial effect on Vermont commerce and consumers. As a direct and proximate result of Defendants' violations of law, Plaintiff and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Tires, likely misled all commercial and institutional indirect purchasers acting reasonably under the circumstances to believe that they were purchasing Tires at prices set by a free and fair market. Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq*., and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

146.    **West Virginia**: Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the West Virginia Consumer Credit and Protection Act, W.Va. Code § 46A-6-101, *et seq*. Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes West Virginia, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Tires at issue was sold, distributed, or obtained in West Virginia. Defendants deliberately failed to disclose material facts to Plaintiff and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for Tires at Issue. Defendants affirmatively misrepresented to all purchasers during the Class Period that Defendants' Tires at Issue prices were

competitive and fair. Defendants' unlawful conduct had the following effects: (1) price competition for the Tires at Issue was restrained, suppressed, and eliminated throughout West Virginia; (2) Tires at Issue prices were raised, fixed, maintained, and stabilized at artificially high levels throughout West Virginia. Defendants' illegal conduct substantially affected West Virginia commerce and purchasers of Tires. As a direct and proximate result of Defendants' violations of law, Plaintiff and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of Tires at Issue, misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Tires at Issue at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiff and members of the Damages Class as they related to the cost of Tires at Issue they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of W.Va. Code § 46A-6-101, *et seq*., and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

147.    **Wisconsin:** Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Wisconsin Consumer Protection Statutes, Wisc. Stat. § 100.18, *et seq*. Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Wisconsin, by affecting, fixing, controlling, and/or maintaining, at artificial and non-competitive levels, the prices at which Tire were sold, distributed, or obtained in Wisconsin. Defendants affirmatively misrepresented to all purchasers during the Class Period that Defendants' Tire prices were competitive and fair. Defendants' unlawful conduct

had the following effects: (1) price competition for the Tires was restrained, suppressed, and eliminated throughout Wisconsin; (2) Tire prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Wisconsin. Defendants' illegal conduct substantially affected Wisconsin commerce and purchasers of Tires. As a direct and proximate result of Defendants' violations of law, Plaintiff and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein. Defendants' deception, including their affirmative misrepresentations concerning the price of Tires at issue, misled all purchasers acting reasonably under the circumstances to believe that they were purchasing Tires at prices set by a free and fair market. Defendants' affirmative misrepresentations constitute information important to Plaintiff and members of the Damages Class as they related to the cost of Tires they purchased. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wisc. Stat. §100.18, *et seq*., and, accordingly, Plaintiff and members of the Damages Class seek all relief available under that statute.

## COUNT IV

### Unjust Enrichment[108]

148.    Plaintiff incorporates by reference the allegations set forth above as if fully set forth herein.

---

[108] Unjust enrichment claims are alleged herein under the laws of the following states: Arkansas, Arizona, California, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

149.    To the extent required, this claim is pleaded in the alternative to the other claims in this Complaint.

150.    Defendants have unlawfully benefited from their sales of Tires because of the unlawful and inequitable acts alleged in this Complaint. Defendants unlawfully overcharged privately held commercial and institutional indirect purchasers, which purchased Tires at prices that were higher than they would have been but for Defendants' unlawful actions.

151.    Defendants' financial benefits resulting from their unlawful and inequitable acts are traceable to overpayments by Plaintiff and members of the Damages Class.

152.    Plaintiff and the Damages Class have conferred upon Defendants an economic benefit, in the nature of profits resulting from unlawful overcharges, to the economic detriment of Plaintiff and the Damages Class.

153.    Defendants have been enriched by revenue resulting from unlawful overcharges for Tires while Plaintiff and members of the Damages Class has been impoverished by the overcharges they paid for Tires imposed through Defendants' unlawful conduct. Defendants' enrichment and the impoverishment of Plaintiff and members of the Damages Class are connected.

154.    The benefits conferred upon Defendants are measurable, in that the revenue Defendants have earned due to their unlawful overcharges of Tires are ascertainable by review of sales records.

155.    Defendants are aware of and appreciate the benefits bestowed upon them by Plaintiff and the Damages Class. Defendants consciously accepted the benefits.

156.    Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiff and the Damages Class all unlawful or inequitable proceeds they received from their sales of Tires.

157.    A constructive trust should be imposed upon all unlawful or inequitable sums received by Defendants traceable to indirect purchases of Tires by Plaintiff and the Damages Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, prays for judgment against Defendants as to each count, including:

158.    The unlawful conduct, conspiracy or combination alleged herein be adjudged and decreed: (a) an unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act; (b) a per se violation of Section 1 of the Sherman Act; (c) an unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust and unfair competition and consumer protection laws as set forth herein; or, alternatively, (d) acts of unjust enrichment by Defendants as set forth herein.

159.    Plaintiff and the Class recover damages, to the maximum extent allowed under the applicable state laws, and that a joint and several judgments in favor of plaintiff and the members of the Damages Class be entered against Defendants in an amount to be trebled to the extent such laws permit;

160.    Plaintiff and members of the Damages Class recover damages, to the maximum extent allowed by such laws, in the form of restitution and/or disgorgement of profits unlawfully obtained;

161.    Plaintiff and members of the Damages Class be awarded restitution, including disgorgement of profits Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment, and the Court establish of a constructive trust consisting of all ill-gotten gains from which Plaintiff and members of the Damages Class may make claims on a pro rata basis;

162.    Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, conspiracy, or combination alleged herein, or from entering into any other conspiracy or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

163.    Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining, or renewing the sharing of highly sensitive competitive information that permits individual identification of company's information;

164.    Plaintiff and the members of the Damages Class be awarded pre- and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

165.    Plaintiff and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law.

### DEMAND FOR TRIAL BY JURY

166.    Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues so triable.

Dated: February 9, 2024                     Respectfully submitted,


                                    By:   */s/ Blaine Finley*
                                          Blaine Finley
                                          **CUNEO, GILBERT & LADUCA, LLP**
                                          4725 Wisconsin Ave., NW
                                          Suite 200
                                          Washington, DC 20016
                                          Telephone: (202) 789-3960
                                          bfinley@cuneolaw.com

                                          J. Barton Goplerud *(pro hac vice)*
                                          Brian Marty *(pro hac vice)*
                                          **SHINDLER, ANDERSON, GOPLERUD &
                                          WEESE, P.C.**
                                          5015 Grand Ridge Drive
                                          Suite 100
                                          West Des Moines, IA 50265
                                          Telephone: (515) 223-4567
                                          goplerud@sagwlaw.com
                                          marty@sagwlaw.com

                                          Jon A. Tostrud *(pro hac vice)*
                                          Anthony Carter *(pro hac vice)*
                                          **TOSTRUD LAW GROUP, P.C.**
                                          1925 Century Park East, Suite 2100
                                          Los Angeles, CA 90067
                                          Telephone: (310) 278-2600
                                          jtostrud@tostrudlaw.com
                                          acarter@tostrudlaw.com